EBERT, Appellant, vs. LANGLADE COUNTY and others, Respondents.

*September 26 — October 12, 1900.*

*Claim for relief of transient poor: Reimbursement of town by county: Construction of statutes: Equity: Suit by taxpayer.*

1. Under sec. 1512, Stats. 1898 (providing for the temporary relief by towns, cities, and villages of poor persons not having a legal settlement therein, and making the expenses so incurred a charge

Ebert vs. Langlade County and others.

against the county, provided notice is given as therein specified), the town, city. or village is primarily liable for the relief, and the county is liable to reimburse it upon its complying with the conditions precedent named in the section.

2. L., a poor person without means of procuring medical treatment, and having no legal settlement in the defendant county, became suddenly in need of treatment while residing in one of its towns. The chairman of said town gave the prescribed notice, brought L. to the county seat, and employed a physician to render medical treatment to L., under an agreement that the physician should file his claim therefor with the county clerk, to be paid by the county. The amount charged for the services was reasonable and the claim was audited by the county board. Thereupon plaintiff brought an action as a taxpayer, suing in behalf of himself and all other persons similarly situated, to enjoin the issuing of a county order on such audited claim. *Held*, that the claimant had no legal or equitable demand enforceable against the county. The claim should have been presented to and audited by the auditing board of the town and paid out of the town treasury like any other town liability, and a claim should then have been presented by the town to the county for reimbursement.

3. Although the county, in such case, was not legally liable for the claim, yet, as it was reasonable in amount, and, if it had taken its proper course, would ultimately have reached the county as a legal claim and would have been paid at precisely the amount allowed, a court of equity will not interfere at the suit of a taxpayer.

APPEAL from a judgment of the circuit court for Langlade county: JOHN GOODLAND, Circuit Judge. *Affirmed.*

Equitable action by a taxpayer, suing in behalf of himself and all other persons similarly situated, to enjoin defendant county from issuing a county order on an audited bill for medical services rendered a poor person, on the ground that the claimant was not entitled to recover his claim of the county.

The cause was tried by the court and facts were found as follows: Louis Leduchi, a poor person without means of procuring medical treatment, and having no legal settlement in *Langlade County*, became suddenly in need of such treatment while residing in the town of Vilas in said county.

The chairman of the town of Vilas, pursuant to sec. 1512, Stats. 1898, notified the county clerk of the county, February 9, 1898, and within ten days after the condition of Leduchi became known to him, that said Leduchi was sick and helpless and wholly without means to take care of himself and that he had no legal settlement in said town of Vilas. Said chairman of the town of Vilas conveyed Leduchi to the city of Antigo at the time notice was served on the county clerk as aforesaid, at which time he, as chairman of the town of Vilas, and the county clerk as such, employed *M. J. Lower*, one of the defendants, to render medical treatment to said Leduchi, and agreed that he should file his claim for services with such county clerk, to be paid by said county. The claim in question was filed pursuant to such agreement. The amount charged for said services is reasonable. The board of supervisors of said county, prior to the allowance of the bill in question, allowed bills for board and lodging for said Leduchi upon the ground of his being a public charge.

Upon such facts the court decided, as matter of law, that *Lower's* claim was a proper county charge, and that the allowance thereof by the county board was proper because the county board accepted said Leduchi as a county pauper. Judgment was rendered accordingly and plaintiff appealed.

For the appellant there was a brief by *Finucane & Conway*, and oral argument by *F. J. Finucane*.

For the respondents there was a brief signed by *T. W. Hogan*, attorney for *Langlade County* and *Hayssen*, county clerk, and *Max Hoffman*, attorney for *Lower*, and oral argument by *Mr. Hogan*.

MARSHALL, J.    There can be no doubt but that the town of Vilas was primarily liable for the relief of Leduchi under sec. 1512, Stats. 1898, and that the county was liable to reimburse the town upon its complying with the conditions precedent named in such section, which reads as follows: "When any person not having a legal settlement therein

shall be taken sick, lame or otherwise disabled in any town, city or village or for any other cause shall be in need of relief as a poor person and shall not have money or property to pay his board, maintenance, attendance and medical aid, the supervisors or other proper authorities shall provide such assistance to such person as they may deem just and necessary, and if he shall die they shall give him a decent burial. They shall make such allowance for such board, maintenance, nursing, medical aid and burial expenses as they shall deem just and order the same to be paid out of the town, city or village treasury. The expenses so incurred shall be a charge against the county, the account [of the town] therefor shall be audited by the county board and paid out of the county treasury. . . . It shall be the duty of the authorities within ten days after such person so becomes a public charge in their town, city or village to notify the county clerk of such fact, and thereupon the county authorities may take charge of such poor person and remove him to the county poor farm or relieve him in such other manner as they may see fit." Now, while there is a finding that the claimant was employed to render medical aid to Leduchi, by the county clerk and the chairman of the board of supervisors of the town of Vilas acting together, there is no evidence to that effect, nor any to show that the county clerk had authority to represent the county in such matters. The undisputed evidence is that Leduchi was a subject for immediate relief by the town of Vilas under sec. 1512; that the chairman of the board of supervisors of the town employed the claimant to render such relief; that notice to the county was given in order to render it liable to reimburse the town; and that the county did not exercise its right to take charge of Leduchi and relieve him independent of the town. It follows that the town became the debtor of the claimant; that he did not have any legal or equitable demand enforceable against the

county, and that it had no legal right to allow or pay his claim. The claim should have been presented to and audited by the auditing board of the town of Vilas and paid out of the town treasury like any other town liability, and a claim should then have been presented by the town to *Langlade County* for reimbursement.

Notwithstanding what has been said, it does not necessarily follow that plaintiff could successfully appeal to a court of equity to enforce the legal right of the county, and performance of the duty of its proper officers, to reject the physician's claim. A taxpayer can successfully invoke the power of a court of equity to enforce a right of a public corporation when there is danger that such corporation will otherwise suffer some substantial injury which to some extent will affect the taxpayer. The power of taxpayers, in such an emergency, to set judicial machinery in motion, is a very valuable right, but it must be kept within those reasonable limits which govern the administration of justice in courts of equity. The wrong existing or threatened must be one that will or may, if not properly met, cause some substantial loss to the corporation, else there is no warrant for calling the equity power of the court into activity.

Applying the foregoing to the facts of this case, it is clear that the judgment appealed from is right. No equity was shown by the evidence, entitling plaintiff to maintain the action. While it is true that the claim of the physician for attending Leduchi was an indebtedness of the town of Vilas primarily, the county was ultimately liable therefor. The claim appears to have been reasonable in amount. It would, if it had taken its proper course, ultimately have reached the county as a legal claim and been paid precisely at the same amount as that allowed by the county, direct to the physician.

The result of this case by no means justifies such conduct as the action was designed to prevent. It was clearly

wrong. The statutes should be strictly followed at every step in incurring public liabilities and in the disbursement of public moneys; but equity will not lend its aid to prevent or remedy violations of duty in that regard unless such violations will or may result in some substantial loss to the public as a whole.

*By the Court.*— The judgment is affirmed.

CASSODAY, C. J., took no part.